O

JS - 6

cc order, docket and remand letter
to Los Angeles Superior Court BC 404648

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA EVANS, | Case No. CV 09-01630 DDP (AJWx) |
| Plaintiff, | **ORDER GRANTING MOTION TO REMAND** |
| v. | [Motion filed on April 28, 2009] |
| SOUTHERN CALIFORNIA GAS COMPANY, | |
| Defendants. | |

This matter comes before the Court on Plaintiff Alicia Evans'
Motion to Remand.  Evans' Complaint alleges various state law
causes of action related to the disability leave policy (and
particular actions related to her use of the disability policy)
used by her former employer, Southern California Gas Company.
Defendant Southern California Gas Company removed this action from
California state superior court on the basis of federal preemption
by ERISA and the Labor Management Relations Act.  Arguing that her
causes of action are outside the scope of both preemption
provisions, Plaintiff moves to remand.  After reviewing the

materials submitted by the parties and hearing oral argument, the
Court grants the Motion and remands the action.

**I.   BACKGROUND**

Plaintiff Alicia Evans ("Plaintiff" or "Evans") brings this
suit against her former employer, Southern California Gas Company
("Defendant" or "SCGC").  Plaintiff alleges that she was employed
at SCGC from April 1993 through her termination date of August 12,
2008.  Compl. ¶ 6.  At all times during her employment, Plaintiff
was represented by the Utility Workers Union of America, AFL-CIO.
Franke Decl. in Support of Notice of Removal ("Franke Decl."), ¶ 3.
SCGC maintains a Pension and Benefit Agreement Plan Document, which
is Appendix D to the Collective Bargaining Agreement between SCGC
and the Utility Workers Union of America AFL-CIO.  Notice of
Removal, Exs. C-D.  The Plan covers all of SCGC's represented
employees.

Union employees are entitled to 9 weeks of paid sick time per
year.  Starratt Decl., ¶ 7.  The Plan provides long-term disability
benefits.  For employees who have completed less than 15 years of
service, long-term disability benefits are available for sixty
consecutive months.  Notice of Removal, Ex. C at 36.

According to Defendant's Disabilities Management Services
("DMS") Manager, which acts as Plan Administrator, Evans took a
series of leaves of absences beginning in 1998 for varying medical
reasons.  Starratt Decl., ¶ 5.  In March 2000, Evans took a two-
month leave of absence for gastric bypass procedure, and returned
to work on May 15, 2000.  Id. at ¶ 6.  In fall of 2000, Evans filed
a claim with DMS for the removal of a cyst and for post-surgical

1  nerve damage.  On May 21, 2003, Evans filed a new disability claim

2  for abdominal pannus surgery.  Id. at ¶ 7.

3       Plaintiff alleges that during her employment she became

4  disabled as a result of work-related injuries primarily to her left

5  hand and wrist, left elbow, and low back.  Compl. ¶ 8.

6  Additionally, Plaintiff had developed breathing difficulties, which

7  had progressively worsened by August 2004.  Id.  After consulting

8  with a doctor, Plaintiff was placed on restricted duty for a short

9  period of time and had attempted to return to work thereafter

10  through the Work Hardening Program.  Id. at ¶ 9.  A workers'

11  compensation claim was filed on her behalf.  Id.; Starratt Decl.,

12  ¶ 10 (workers' compensation claim filed on September 8, 2004).

13  Plaintiff alleges that Defendant's Human Resources Director[1] would

14  not allow Plaintiff to resume her job duties and informed her that

15  the company could not accommodate her restrictions.  Compl. ¶ 10.

16       As of November 2006, Plaintiff's breathing difficulties had

17  increased.  Id. at ¶ 11.  As a result, Plaintiff had an angioplasty

18  procedure in the throat in January 2007.  Id.  Following a medical

19  exam related to her workers' compensation case, Plaintiff was

20  diagnosed with cervical strain and lateral epicondylitis of the

21  left elbow.  Id. at ¶ 12.  The doctor's work restrictions for

22  Plaintiff consisted of "no very heavy work."  Id.  When Plaintiff

23  attempted to return to work in April/May of 2008, the Human

24  Resources Director told her that she would not be able to return

25

26

27      [1]Defendant notes that Plaintiff erroneously referred to this

28  person as the Human Resources Director; in fact, she was a Plan
   administrator.

3

1   until she was cleared by her back doctor and the doctor for her

2   arm.  Id. at ¶ 13.

3        Plaintiff's eligibility for the Plan's long-term disability

4   benefits began on August 12, 2003.  Starratt Decl., ¶ 7 & Ex. A.

5   In a letter dated August 11, 2008, SCGC informed Plaintiff that her

6   employment had been terminated effective August 12, 2008 because

7   her long term disability benefits had expired.  Compl. ¶ 15.  In

8   particular, the letter stated: "Under the terms of the Disability

9   Plan Benefit, your eligibility for benefits ended on August 12,

10  2008, and accordance with the terms of the Plan, your employment

11  will be terminated effective that date."  Id.

12       Plaintiff's Complaint, which was originally filed in the Los

13  Angeles Superior Court, alleges six causes of action arising out of

14  her accommodations and termination.  First, Plaintiff alleges that

15  she was subject to discrimination in the form of disparate

16  treatment on the basis of her disability in violation of the

17  California Fair Employment and Housing Act ("FEHA"), California

18  Government Code §§ 12940 et seq.  Compl. ¶¶ 18-26.  Second,

19  Plaintiff alleges that the Disability Benefit Plan is

20  discriminatory in that it has a disparate impact on employees who

21  are medically disabled.  Id. at ¶¶ 27-30.  Third, Plaintiff alleges

22  that SCGC violated Government Code § 12940(m) by failing to provide

23  a reasonable accommodation to Plaintiff.  Id. at ¶¶ 31-34.  Fourth,

24  Plaintiff alleges that SCGC failed to engage in an interactive

25  process in violation of Government Code § 12940(n).  Id. at ¶¶ 35-

26  38.  Fifth, Plaintiff alleges that SCGC discriminatorily refused to

27  reinstate her once she was able to return to work.  Id. at ¶¶ 39-

28  42.  Finally, Plaintiff alleges that Defendant retaliated against

1  Plaintiff for participating in activities protected by FEHA.  Id.
2  at ¶¶ 43-48.  Plaintiff seeks compensatory damages in the form of
3  "[a]ctual medical expenses, actual, consequential and incidental
4  losses, including but not limited to, the loss of income and
5  benefits," as well as emotional distress, punitive damages,
6  attorneys' fees and costs, and other appropriate relief.  Id. at
7  10:11-23.

8  **II.   PROCEDURAL STANDARD FOR REMOVAL JURISDICTION AND REMAND**

9       Pursuant to 28 U.S.C. § 1441(a), a district court has removal
10  jurisdiction over actions brought in state court which could have
11  been brought in federal court.  28 U.S.C. § 1441(a).  A plaintiff
12  may file a motion to remand for failure to comply with the
13  procedural aspects of removal; alternatively, where the district
14  court lacks subject matter jurisdiction, the case must be remanded.
15  28 U.S.C. § 1447(c).  A defendant has the burden to establish that
16  removal is proper, and a court should resolve any doubt against
17  removal.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

18       Only actions that could have been filed in federal court
19  originally may be removed by a defendant.  28 U.S.C. § 1441;
20  Audette v. Int'l Longshoremen's and Warehousemen's Union, 195 F.3d
21  1107, 1111 (9th Cir. 1999) (citing Caterpillar Inc. v. Williams,
22  482 U.S. 386, 392 (1987)).  One category of such cases is "federal
23  question" cases, i.e., cases "arising under the Constitution, laws,
24  or treaties of the United States."  28 U.S.C. § 1331.  Generally,
25  the presence or absence of federal question jurisdiction is
26  governed by the "well-pleaded complaint rule," which provides that
27  federal question jurisdiction exists only when a federal question
28  is presented on the face of the plaintiff's properly pleaded

1  complaint.  <u>Audette</u>, 195 F.3d at 1111.  Federal pre-emption, as a
2  federal defense to the plaintiff's suit, "ordinarily" "does not
3  authorize removal to federal court."  <u>Metropolitan Life Ins. Co. v.</u>
4  <u>Taylor</u>, 481 U.S. 58, 63 (1987).  In certain circumstances, however,
5  Congress "may so completely pre-empt a particular area that any
6  civil complaint raising this select group of claims is necessarily
7  federal in character" and may be the basis for removal.  <u>Id.</u> at 63-
8  64.  Claims pre-empted by § 301 of the LMRA receive such treatment.
9  <u>Id.</u> at 64.  Additionally, claims that "relate to" an ERISA plan and
10  that fall under the scope of ERISA's civil enforcement provisions
11  are completely preempted such that the "well-pleaded complaint"
12  rule does not apply.  <u>Id.</u> at 66-67.
13  **III. DISCUSSION**
14      The parties do not dispute that, on its face, Plaintiff's
15  Complaint alleges only state law causes of action.  Instead,
16  Defendant argues that Plaintiff's claims are completely preempted
17  by ERISA and/or § 301 of the Labor Management Relations Act.  For
18  the reasons discussed below, the Court finds that neither ERISA nor
19  the LMRA completely preempts Plaintiff's claims and that remand is
20  therefore warranted.
21      **A.   ERISA Preemption**
22      ERISA completely preempts a state law claim, "permitting the
23  defendant to remove despite the well-pleaded complaint rule," where
24  two circumstances exist: (1) ERISA preempts the plaintiff's cause
25  of action pursuant to 29 U.S.C. § 1144(a), and (2) the cause of
26  action falls within the scope of ERISA's civil enforcement
27  provision, 29 U.S.C. § 1132(a).  <u>Rutledge v. Seyfarth, Shaw,</u>
28  <u>Fairweather & Geraldson</u>, 201 F.3d 1212, 1216 (9th Cir. 2000).

1    Because the Court finds that the cause of action does not fall

2    within the scope of ERISA's civil enforcement provision, the Court

3    does not address whether the claim falls within the scope of

4    ERISA's preemption provision.[2]

5         While ERISA's preemption provision, standing alone, may

6    provide a defense to a state cause of action, complete preemption

7    exists only when a cause of action *also* falls into ERISA's civil

8    enforcement provision, 29 U.S.C. § 1132.  That section provides

9    that a participant or beneficiary may bring actions: (1) "to

10   recover benefits due to him under the terms of his plan, to enforce

11   his rights under the terms of the plan, or to clarify his rights to

12   future benefits under the terms of the plan," see id. at (a)(1)(B);

13   (2) "to enjoin any act or practice which violates [ERISA] or the

14   terms of the plan," id. at (a)(3)(A); (3) "to obtain other

15   appropriate equitable relief (i) to redress . . . violations [of

16   ERISA or the plan] or (ii) to enforce any provisions of this

17   subchapter or the terms of the plan," id. at (a)(3)(B); or (4) to

18   enforce rights under subsection (c), id. at (a)(1)(A).

19        Defendant argues that Plaintiff's Causes of Action fall into

20   the scope of § 1132.  Defendant argues that Plaintiff's action must

21   be characterized as one for benefits under the plan because the

22   terms and conditions of her leave of absence were governed by the

23   Plan; "[a]s an exclusive right of the Plan alone," Defendant

24   argues, Plaintiff maintained a non-working status and she seeks

25   relief only as a result of the termination of those benefits.

26   See Opp. at 12.  In other words, Defendant essentially argues that

27   ─────────────

28        [2]See Hurlic v. S. Cal. Gas Co., 539 F.3d 1024, 1035-37 (9th
     Cir. 2008).

1   Plaintiff seeks to challenge the denial of benefits available under
2   the Plan, which falls within the scope of § 1132.
3       Plaintiff's claim is not stated in such a way that makes clear
4   she seeks to enforce the terms of the plan or to recover benefits
5   she claims to deserve under the plan.  Rather, her claim for
6   benefits is framed as part of her compensatory damages.  While
7   Defendant urges that Plaintiff's claims must nevertheless be read
8   in this way, the Court disagrees.  Plaintiff seeks to state a claim
9   for discrimination.  Although ERISA prohibits discrimination on the
10  basis of the participant's exercise of a right, <u>see</u> 29 U.S.C.
11  § 1140, Defendant has not pointed to (and the Court has not
12  independently found) ERISA provisions prohibiting discrimination on
13  the basis of disability such that Plaintiff's claims could fairly
14  be read on 29 U.S.C. § 1132(a)(3)(A).  For example, Plaintiff's
15  claim for retaliation is allegedly based on her exercise of rights
16  granted by FEHA, not by the Plan.  Accordingly, the Court finds
17  that there is no complete preemption under ERISA.
18      **B.   Preemption Under § 301 of the LMRA**
19      As an alternative basis for federal question jurisdiction,
20  Defendant argues that Plaintiff's claims are completely preempted
21  by section 301 of the Labor Management Relations Act ("LMRA"), 29
22  U.S.C. § 185(a).  There appears to be no dispute that the
23  disability benefits plan of which Plaintiff was a part is a
24  collective bargaining agreement ("CBA"), and therefore *could* give
25  rise to federal preemption.  As discussed in more detail below,
26  however, the Court finds that the LMRA does not preempt Plaintiff's
27  claims.
28  ///

8

1            1.   Legal Framework for LMRA Preemption

2        Section 301 of the LMRA provides that "[s]uits for violation

3    of contracts between an employer and a labor organization

4    representing employees in an industry affecting commerce . . . may

5    be brought in any district court of the United States having

6    jurisdiction of the parties."  29 U.S.C. § 185(a).  In light of the

7    policies behind continuity of labor management law, see Teamsters

8    v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962), the Supreme Court

9    has held that "the preemptive force of § 301 is so powerful as to

10   displace entirely any state cause of action 'for violation of

11   contracts between an employer and a labor organization'"; as a

12   result, a complaint alleging such an action "necessarily 'arises

13   under' federal law."  Franchise Tax Bd. of State of Cal. v.

14   Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1,

15   23-24 (1983).

16       The basic rule is that § 301 preempts both state law claims

17   directly addressed to a violation of a contract between an employer

18   and a labor organization and those claims in which "resolution of a

19   state-law claim is substantially dependent upon analysis of the

20   terms of an agreement made between the parties in a labor

21   contract."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220

22   (1985).  Where a claim is "inextricably intertwined with

23   consideration of the terms of the labor contract," it will be

24   preempted.  Id. at 213.  That said, the reach of LMRA preemption

25   has its limits: "[c]learly, § 301 does not grant the parties to a

26   collective-bargaining agreement the ability to contract for what is

27   illegal under state law," and § 301 does not "preempt state rules

28   that proscribe conduct, or establish rights and obligations,

1   independent of a labor contract." <u>Id.</u> at 212. "Causes of action
2   that only tangentially involve a provision of a collective-
3   bargaining agreement" and those which "assert nonnegotiable state-
4   law rights independent of any right established by contract" are
5   not preempted. <u>Ramirez v. Fox Television Station, Inc.</u>, 998 F.2d
6   743, 748 (9th Cir. 1993) (internal quotation marks and brackets
7   omitted).

8       "The demarcation between preempted claims and those that
9   survive § 301's reach is not . . . a line that lends itself to
10  analytical precision." <u>Cramer v. Consolidated Freightways, Inc.</u>,
11  255 F.3d 683, 691 (9th Cir. 2001) (en banc).  In <u>Cramer</u>, the Ninth
12  Circuit explained the various considerations that bear on whether
13  the LMRA preempts an asserted state law claim involving a
14  collective bargaining agreement.  In general, "[a] state law claim
15  is not preempted under § 301 unless it necessarily requires the
16  court to interpret an existing provision of a CBA that can
17  reasonably said to be relevant to the resolution of the dispute."
18  255 F.3d at 693.  In doing this analysis, the plaintiff's claim, as
19  opposed to potential defenses, is central: "[t]he plaintiff's claim
20  is the touchstone for this analysis; the need to interpret the CBA
21  must inhere in the nature of the plaintiff's claim.  If the claim
22  is plainly based on state law, § 301 preemption is not mandated
23  simply because the defendant refers to the CBA in mounting a
24  defense." <u>Id.</u> at 691.  The connection between the claim and the
25  terms of the CBA must "reach a reasonable level of credibility" –
26  "[a] creative linkage between the subject matter of the claim and
27  the wording of a CBA provision is insufficient." <u>Id.</u> at 692.
28

1    The inquiry has been alternatively framed as two steps.
2    First, the court conducts an inquiry "into whether the asserted
3    cause of action involves a right conferred upon an employee by
4    virtue of state law, not by a CBA." Burnside v. Kiewit Pacific
5    Corp., 491 F.3d 1053, 1059 (9th Cir. 2007).  In determining whether
6    a particular right "inheres in state law or, instead, is grounded
7    in the CBA," a court must consider the *legal* character of claim.
8    Id. at 1060.  "If the right exists solely as a result of the CBA,
9    then the claim is preempted." Id. at 1059. On the other hand, if
10   "the right exists independently of the CBA," the court's analysis
11   requires a second step.  The Court must "consider whether [the
12   claim] is nevertheless 'substantially dependent on analysis of a
13   collective-bargaining agreement.'" Id. (quoting Caterpillar, Inc.
14   v. Williams, 482 U.S. 386, 394 (1987)).  To resolve this question,
15   a court determines "whether the claim can be resolved by 'looking
16   to' versus interpreting the CBA." Id. (brackets omitted); see also
17   Humble v. Boeing Co., 305 F.3d 1004, 1008 (9th Cir. 2002) ("To
18   balance properly the policy considerations [of LMRA preemption],
19   mere consultation of the CBA's terms, or a speculative reliance on
20   the CBA will not suffice to preempt a state law claim.").
21   Preemption does not exist, for example, where a court must consult
22   the CBA to discern that none of the terms is reasonably in dispute
23   or to refer to bargained-for wage rates in computing a penalty or
24   consult the requirements of a CBA whose terms are not in dispute.
25   Burnside, 491 F.3d at 1060; Soremekun v. Thrifty Payless, Inc., 509
26   F.3d 978, 993 (9th Cir. 2007).
27
28

1     In evaluating whether FEHA disability discrimination suits

2  assert a state-law right independent of the CBA, the Ninth Circuit

3  has also used a three-question framework.  That framework asks:

4         (1) whether the CBA contains provisions that govern the

5         actions giving rise to a state claim, and if so, (2) whether

6         the state has articulated a standard sufficiently clear that

7         the state claim can be evaluated without considering the

8         overlapping provisions of the CBA, and (3) whether the state

9         has shown an intent not to allow its prohibition to be altered

10        or removed by private contract. A state law will be preempted

11        only if the answer to the first question is 'yes,' and the

12        answer to either the second or third is 'no.'

13  Miller v. AT&T Network Sys., 850 F.2d 543, 548 (9th Cir. 1988); see

14  Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1523-28 (9th Cir. 1995);

15  Espinal v. Northwest Airlines, 90 F.3d 1452, 1457 (9th Cir. 1996).

16        2.   Application

17     Evans seeks relief on the basis of six causes of action, each

18  of which alleges that Defendant's action somehow violated FEHA.[3]

19  Because the preemption inquiry turns on Plaintiff's claims, the

20  Court's analysis must consider whether *any* of the alleged causes of

21  action are preempted.  As discussed in more detail below, the

22  majority of the FEHA claims can be treated together for the

23  purposes of that analysis.  Although the parties do not focus on

24  the distinctions between the claims in their discussion, the Court

25  notes that the disparate impact claim is perhaps anomalous in that

26

27        [3]Plaintiff's Complaint does not allege a straightforward

28  violation of the CBA; that is, it does not directly allege a breach
    of contract.

1   it argues that portions of the Plan, which are part of the CBA,
2   violate FEHA.  The Court finds none of the claims presents a basis
3   for complete LMRA preemption.

4       Where rights exist in state law independently of the CBA and
5   are not directly addressed by the CBA, the Ninth Circuit has found
6   that they are not preempted.  In <u>Cramer</u>, for example, the
7   plaintiffs alleged state law privacy violations for their
8   employer's placing of cameras in bathrooms.  The defendant argued
9   that the provisions of the CBA that addressed cameras and drug
10  testing applied.  The Ninth Circuit found that the state privacy
11  claims were not preempted, in part because the claims were "based
12  on California's constitutional and statutory rights of privacy
13  guaranteed to all persons, whether or not they may happen to work
14  subject to a CBA."  255 F.3d at 694.  Moreover, the court held,
15  "[e]ven if the CBA did expressly contemplate the use of two-way
16  mirrors to facilitate detection of drug users, such a provision
17  would be illegal under California law" and Plaintiffs would still
18  have an independent right to sue on the basis of those rights
19  without requiring recourse to the CBA.  <u>Id.</u> at 695-96.

20      When it has considered state discrimination law, the Ninth
21  Circuit has tended to find no LMRA preemption.  In <u>Humble v. Boeing</u>
22  <u>Co.</u>, 305 F.3d 1004 (9th Cir. 2002), the court addressed whether
23  reasonable accommodation and retaliation claims brought under the
24  State of Washington's disability discrimination law were preempted
25  by the LMRA.  The court held that there was no preemption of those
26  claims.  <u>Id.</u> at 1012.  In coming to its conclusion, the court's
27  discussion rejected a number of arguments presented by the
28  defendant employer.  First, the court rejected the defendant's

13

argument that rights at issue were derived from the CBA.  <u>Id.</u> at
1009.  The defendant had argued that a provision of the CBA
preempted the plaintiff's reasonable accommodation claim because it
prescribed procedures by which a disabled employee would be
considered for other jobs and therefore directly "covered" the
subject matter of the case.  <u>Id.</u>  The court found that these
procedures did not preempt a state disability discrimination claim,
even if the plaintiff could alternatively go through the grievance
process because the right to reasonable accommodation was a
distinct right.  <u>See</u> <u>id.</u>  Second, the court found that the
intricate scheme of seniority provided by the CBA did not render
the CBA "intertwined" with the plaintiff's claim because the
seniority scheme was only potentially relevant to the claim.  <u>Id.</u>
at 1010-11.  Finally, the defendant argued that the CBA may provide
it with the defense of a non-discriminatory justification.  <u>Id.</u> at
1011.  The court noted that defensive reliance on the CBA did not
trigger preemption, in light of both the Circuit's decision in
<u>Cramer</u> and the fact that a "reasonable accommodation" claim "does
not hinge on discriminatory animus, leaving this possible basis for
preemption in the realm of the hypothetical."  <u>Id.</u> at 1012
(footnote omitted).  <u>See also</u> <u>Miller v. AT&T Network Systems</u>, 850
F.2d 543, 549 (9th Cir. 1988) (rejecting preemption argument for
claims brought under Oregon state disability law).

     Claims brought under California's disability discrimination
laws have fared similarly.  The Ninth Circuit has tended to find
that state claims brought under FEHA were not preempted.  In <u>Jimeno
v. Mobil Oil Corp.</u>, 66 F.3d 1514 (9th Cir. 1995), applying the
three-pronged approach of <u>Miller</u>, the court found that § 301 of the

1  LMRA did not preempt the plaintiff's FEHA claim.  First, the court
2  noted that the CBA did not govern the plaintiff's FEHA claim.  <u>Id.</u>
3  at 1524.  The plaintiff's prima facie case could be evaluated
4  without construing the CBA because, though the CBA established some
5  physical disability determinations, it was "silent regarding
6  possible management responses when an employee [was] determined to
7  be unfit to continue in a position without work restrictions."  <u>Id.</u>
8  Additionally, the presence of a potential defense did not require
9  interpretation of the CBA because the CBA contained no provisions
10 that would bear on the reasonableness of the employer's actions.
11 <u>Id.</u>  Second, the court noted that "clear statutory and regulatory
12 standards provide a means to determine 'reasonable accommodation'
13 without reference tot he CBA."  <u>Id.</u> at 1527.  And third, the court
14 explained that California has shown an intent not to allow its
15 prohibition on discrimination to be waived through private contract
16 by "explicitly establish[ing] the right to employment without
17 discrimination based on physical handicap as a public policy of the
18 state."  <u>Id.</u> at 1528 (citing Cal. Gov't Code § 12920).  <u>See also</u>
19 <u>Ackerman v. Western Elec. Co.</u>, 860 F.2d 1514 (9th Cir. 1988) (FEHA
20 disability discrimination); <u>Ramirez v. Fox Television Station,</u>
21 <u>inc.</u>, 998 F.2d 743, 748 (9th Cir. 1993) (FEHA race discrimination);
22 <u>Chmiel v. Beverly Wilshire Hotel Co.</u>, 873 F.2d 1283 (9th Cir. 1989)
23 (age discrimination).

24      With this jurisprudential backdrop in mind, the Court finds
25 that § 301 of the LMRA does not preempt Plaintiff's First and Third
26 through Sixth Causes of Action.  First, the rights on which
27 Plaintiff's legal claims rest are independent of her CBA.
28 Defendant's characterization of Plaintiff's allegations

notwithstanding,[4] it is well-established that FEHA violations arise
independently of a CBA.  Second, the Court concludes that these
provisions also do not require "interpretation" of the provisions
of the plan.  With respect to the relevance of the procedures for
accommodations, the seniority structure, and Defendant's potential
defenses, the Court finds the Ninth Circuit's decision in <u>Humble</u>
applicable here.[5]  Moreover, to the extent Defendant urges the
Court to apply the test employed by the <u>Miller</u> court, the Court
notes that <u>Jimeno</u> resolves the second and third prongs of that
inquiry against Defendant.  In the same vein, to the extent that
Defendant suggests that the Court will need to determine whether
the CBA "waives" any provisions of state law, the Court is not
persuaded: FEHA claims may not be waived, and any other potentially
waived rights are either too speculative to satisfy the § 301
inquiry or rest on a mischaracterization of Plaintiff's claims.
Overall, while the Court acknowledges that the CBA may be a
relevant *reference* in adjudicating Plaintiff's claims, the Court is
not convinced that the potential *interpretation* of the CBA is any
more than speculative or inheres in Plaintiff's claims.

The Second Cause of Action presents a closer call, however.
In the Second Cause of Action, Plaintiff alleges that a provision
of the CBA – the "100% healed" provision – has a discriminatory

---

[4]In general, Defendant focuses on reframing Plaintiff's claims
as, for example, alleging that she had a right to continued work or
a right to be inactive for more than five years.  The Court does
not read Plaintiff to allege such a right.  Rather, she alleges,
for example, that she was the victim of retaliation or was
terminated because of her disability.

[5]Of course, after <u>Cramer</u>, potential defenses are perhaps less
important, as the focus is on the Plaintiff's claims.

1   impact on the medically disabled in a way that violates FEHA.

2   See Compl. ¶¶ 27-30.  As mentioned above, Plaintiff's right to be

3   free from discrimination under FEHA is a right independent of the

4   CBA.  In Madison v. Motion Picture Set Painters & Sign Writers

5   Local 729, the court addressed a similar claim and found no

6   preemption.  132 F. Supp. 2d 1244, 1252-53 (C.D. Cal. 2000)

7   (Morrow, J.).  There, the plaintiff challenged the CBA's hiring

8   procedures on the ground that they permitted or facilitated

9   disparate treatment of African-Americans.  Id. at 1252.  Although

10  the plaintiff alleged that the CBA terms themselves violated the

11  law, the court found that the challenge was not preempted because

12  the parties did not contest the meaning of the provisions or argue

13  that they were improperly applied.  Id. at 1252-53.  But see Vera

14  v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003); Medrano v. Excel

15  Corp., 985 F.2d 230, 234 (5th Cir. 1993).

16       The Court finds Judge Morrow's reasoning in Madison persuasive

17  and applicable here.  Plaintiff does not suggest that Defendant

18  misinterpreted or misapplied the "100% policy," and Defendant does

19  not clearly articulate a dispute about the meaning of the term.

20  Rather than being "substantially dependent" on an analysis of the

21  CBA terms, the question is whether the construction disparately

22  impacts certain disabled individuals in violation of the law.  See

23  Madison, 132 F. Supp. 2d at 1252-53 & n.18.  Although Defendant's

24  argument has some persuasive force and some support in the

25  analytical thicket of LMRA preemption, the Court finds that

26  Plaintiff's claims are not preempted by the LMRA.

27  ///

28  ///

**IV.    CONCLUSION**

Because the Court finds that neither ERISA nor the LMRA provide a basis for complete preemption on the arguments presented to the Court, the Court finds that it does not have subject matter jurisdiction, grants Plaintiff's motion, and remands the action to state court.

IT IS SO ORDERED.


Dated: July 20, 2009

DEAN D. PREGERSON
United States District Judge